## CHAMBERS et al. v. WHITE.

### No. 4826.

Court of Civil Appeals of Texas. Texarkana.
Dec. 31, 1935.

Rehearing Denied Jan. 9, 1936.

King, Mahaffey, Wheeler & Bryson, of Texarkana, for appellants.

L. E. Keeney, of Texarkana, and O. H. Atchley, of New Boston, for appellee.

HALL, Justice.

The following statement of the case is agreed by the parties as being correct, and is adopted by the court:

"This action was brought in the district court of Bowie county, Tex., by Joseph White, a minor, who sued by his sister, Oleane White, as next friend, against D. A. Chambers, L. C. Baker, and Sam H. Smelser, as executors of the will of Miss Jennie Tapp, deceased. In the record the suit is sometimes styled 'Oleane White et al., Plaintiffs,' and again as 'Joseph White, by Oleane White, as Next Friend, Plaintiff.'

"The object of the suit was to recover from the appellants, as executors of the will of Miss Jennie Tapp, deceased, the sum of $1,000, and interest thereon alleged to be due the said Joseph White, as the result of an alleged oral contract made be-

tween Miss Jennie Tapp, deceased, and Joe White, the father of Joseph White, the minor, whereby there was transferred to Miss Jennie Tapp by Joe White, the father, acting for his minor son, ten shares of stock of the par value of $100 each, in the Farmers State Bank of New Boston, Tex.; and it is alleged that, as consideration for such transfer of stock, Miss Jennie Tapp orally agreed, within a reasonable time, to pay par therefor—that is, the sum of $1,000.

"The contract sued upon was alleged to have been made on or about February 1, 1927, and it was further alleged that Miss Jennie Tapp died testate on the 19th day of May, 1932, without having paid any portion of the alleged contract price of $1,000 for the shares of stock.

"The appellant answered by interposing a general denial, and alleged that, if any stock in the Farmers State Bank was ever issued in the name of the appellee, Joseph White, a minor, it was so issued at the direction of Joe White, appellee's father, who at all times was the owner of same, and caused the same to be issued in the name of appellee, with a view and purpose of illegally avoiding the liability fixed by law upon stockholders of such bank.

"The appellants further alleged, in substance, that about the 1st of December, 1926, the Farmers State Bank, on account of great losses in its assets, was in imminent danger of being closed on account of its insolvency, by the banking commissioner of Texas, and it became necessary for said bank to have paid into, and become a part of its assets by some one, at least the sum of $50,000; that at this time the deceased, Miss Jennie Tapp, was a large stockholder in said bank, and was solicitous that said bank should be kept open; and that all the stockholders in said bank were at said time in imminent danger of having an assessment levied against them, which would render valueless all stock owned by them in such bank, including the stock then in fact owned by Joe White, but $1,000 of which was standing in the name of appellee.

"That thereupon Miss Jennie Tapp made a proposition to a number of stockholders of said bank, including Joe White, the father of appellee, and who was in fact the owner of said stock, that, if they would surrender to her their stock in said bank, she would pay over to said bank, to become a part of its assets, the sum of $50,000; that this proposition upon the part of Miss Jennie Tapp was conveyed to the said Joe White, who in fact owned and claimed the right to represent the appellee with respect to the stock standing on the books of said bank in the name of appellee, and he thereupon readily, and with the purpose and desire to avoid an assessment upon said stock, caused the same to be transferred in blank, and delivered to Miss Jennie Tapp, as did other stockholders to whom the same proposition was made by Miss Jennie Tapp, whereupon she paid over to said bank the sum of $50,000, which became a part of its assets, and rendered it thence afterwards a solvent bank.

"The appellants further allege that no such contract as alleged by the appellee was made between him and Miss Jennie Tapp, deceased, nor was any such contract made for the benefit of appellee by Joe White or any one else.

"The appellants further allege that, if Miss Jennie Tapp at any time agreed to pay for the stock of appellee the sum of $1,000, or any other sum, such agreement on her part was absolutely without consideration, for the reason that the stock then and there standing in the name of appellee was absolutely worthless and in fact was a liability rather than an asset in the hands of appellee or any one else.

"The appellants further and finally alleged that the appellee had no interest in the action, but that such suit was brought and being prosecuted in the name of appellee solely by Joe White, his father, for his use and benefit alone.

"The cause was tried before the court without the interposition of a jury, and on the 15th day of June, 1934, judgment was rendered by the trial court in favor of the appellee, Joseph White, a minor, suing by his next friend, Oleane White, against the appellants, as executors of the estate of Miss Jennie Tapp, deceased, for the sum of $1,000, with interest from January 1, 1930, at the rate of 6 per cent. per annum until paid and all costs of suit."

From this judgment appellants prosecute their appeal to this court.

Appellants complain of the action of the trial court in rendering judgment against them because the ten shares of stock in controversy were of no value and for this reason the alleged contract of sale was without consideration. The undisputed evidence in this case, in our opin-

ion, bears out this contention. At the time of the alleged sale of the ten shares of stock, the banking commissioner was calling for an assessment of an amount greater than the entire capital stock of the bank. The record discloses that the appellee's father, who claims to have made the sale of the stock to Miss Jennie Tapp, was aware of this fact, and expressed himself as being unable to meet said assessment. He further testified that his minor son was unable to meet the impending assessment. The record further discloses that shortly after the alleged sale of the stock in controversy Miss Jennie Tapp met said stock assessment by paying into the bank the sum of $50,000 in cash, and received from the bank certain notes of the face value of about $58,000, but which proved to be worth $2,200. These notes received from the bank by Miss Jennie Tapp were those which had been declared worthless by the banking commissioner and required to be taken from the assets of the bank. The capital stock of the bank was $30,000. Thus it will be seen that Miss Jennie Tapp paid into the bank almost one and two-thirds times the face value of the stock certificates. The banking officials testified that the stock at the time of the alleged sale, which was just before the assessment required by the banking commissioner, was worthless, and that from the date of the alleged sale to the date the bank was liquidated no dividends were paid on its stock. It is clear to us from the undisputed facts in the record that this stock at the time of the alleged sale was a liability rather than an asset, because it required the payment into the bank of one and two-thirds its face value to make it of par value. It seems to be the settled law of this state, as well as of other states, that to furnish a consideration for a contract of sale the thing purchased or sold must have some value. City of Cleburne v. Gutta Percha & Rubber Mfg. Co. (Tex.Civ.App.) 127 S.W. 1072; Toledo Savings Bank v. Rathmann, 78 Iowa, 288, 43 N.W. 193; Petersen v. Door, Sash & Lbr. Co., 51 Mich. 86, 16 N.W. 243; Dulaney et al. v. Jones & Rogers, 100 Miss. 835, 57 So. 225 (Sup. Ct.Miss.).

Therefore we are of the opinion that the judgment of the trial court should be reversed, and this cause here rendered for the appellants, and it is so ordered.